UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| MICHAEL A. CONNOLLY, | ) | |
|---|---|---|
| Plaintiff | ) | |
| v. | ) | 2:19-cv-00510-GZS |
| DON DORRIS D/B/A POSTAL FLEET SERVICES, INC., | ) | |
| Defendant | ) | |

**RECOMMENDED DECISION ON OBJECTION TO NOTICE OF REMOVAL**

This matter is before the Court on Plaintiff's Objection to Defendant's Notice of Removal. (Objection, ECF No. 9.) Following a review of the pleadings and after consideration of the parties' arguments, I recommend that the Court overrule Plaintiff's objection.

### BACKGROUND

Plaintiff originally filed this action in the Maine Superior Court (Cumberland County). Plaintiff alleges that Defendant Postal Fleet Services, Inc.[1] terminated his employment with Defendant in violation of the Maine Human Rights Act, 5 M.R.S. § 4572(1)(A), and the Maine Whistleblowers' Protection Act, 26 M.R.S. §§ 833(1)(A) &

---

[1] Plaintiff identified the defendant as "Don Dorris D/B/A Postal Fleet Services, Inc." in the caption of his complaint, while referring to "Defendants, Don Dorris and/or Postal Fleet Services" in the allegations in the complaint. (Complaint, ECF No. 1-1.) Postal Fleet Services, Inc. is a corporation. (Complaint, ¶ 6.) Plaintiff alleges that Mr. Dorris is the "Owner" of Postal Fleet Services, Inc. (Complaint at 1.) For purposes of this recommended decision, I refer collectively to Postal Fleet Services, Inc. and Mr. Dorris as "Defendant," unless otherwise noted.

(D). Plaintiff also alleges that Defendant violated his right under Maine law (26 M.R.S. § 631) to review his personnel file.

On November 4, 2019, Defendant timely filed a Notice of Removal of the action to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Notice of Removal ECF No. 1.) According to the complaint, Plaintiff is a citizen of Maine and Defendant Postal Fleet Services, Inc. is a Delaware corporation with a principal place of business in St. Augustine, Florida.[2] (Complaint, ¶¶ 4, 6.) In its Notice of Removal, Defendant asserts that the matter in controversy in this case exceeds the sum or value of $75,000, "based on the elements of damages requested, as well as damages cap set forth in 5 M.R.S. § 4613[(2)(B)(8)(e)]." (ECF No. 1 at ¶ 9.) In his Objection, Plaintiff asserts that he had not "specified any particular dollar amount[]" and that he "does not expect to exceed $75,000 in damages." (Objection at 2.) Plaintiff also argues that "it is doubtful any and all Court awards will … be in excess of" the jurisdictional requirement, given that Plaintiff "is acting pro se with limited anticipated attorney fees and has a negligible amount of lost income related to this Complaint." (Reply at 4, ECF No. 13.)

## DISCUSSION

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton,* 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994)). Under federal question jurisdiction, federal district courts "have original jurisdiction of all civil

---

[2] To the extent Don Dorris is considered a separate named defendant, Mr. Dorris is a resident of St. Augustine, Florida. (ECF No. 1, ¶ 5.)

actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  Here, Plaintiff alleges a claim under state law.  The Court's federal question jurisdiction, therefore, is not applicable.

Federal district courts also have original jurisdiction "where the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different States." 28 U.S.C. § 1332(a)(1).  For purposes of diversity jurisdiction, a corporation is deemed a citizen of its state of incorporation as well as the state of its principal place of business. 28 U.S.C. § 1332(c)(1).  A corporation's principal place of business is typically where its corporate headquarters are located.  *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010).  Plaintiff's allegations establish the requisite diversity of citizenship. The Court's diversity jurisdiction is thus dependent on the amount in controversy.  *Infinity Real Estate, LLC v. Deutsche Bank Nat'l Trust Co. for RBSGC 2007-B*, 2:18-cv-00038-JAW, 2018 WL 4204642, at *3 (D. Me. Sept. 4, 2018).

When a party questions the amount in controversy, "'the party seeking to invoke jurisdiction has the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount,'" *Abdel-Aleem v. OPK Biotech LLC*, 665 F.3d 38, 42 (1st Cir. 2012) (quoting *Stewart v. Tupperware Corp.*, 356 F.3d 335, 338 (1st Cir. 2004)), and the "'burden of supplying specific factual allegations to support the amount in controversy requirement.'" *Abdel-Aleem,* 665 F.3d at 42 (quoting *Dep't of Recreation & Sports of P.R. v. World Boxing Ass'n*, 942 F.2d 84, 90 (1st Cir. 1991)).  When a case has been removed to federal court and that removal is challenged by the plaintiff, district courts in this circuit "have required the

defendant to show by a preponderance of the evidence" that the amount in controversy exceeds the jurisdictional requirement. *Doughty v. Hyster New England, Inc.*, 344 F. Supp. 2d 217, 219 (D. Me. 2004). In assessing the amount in controversy, the appropriate measure "is the litigation value of the case, an amount arrived at by drawing all reasonable inference in favor of the Plaintiff's Complaint." *Id.* "The amount in controversy is determined 'on the basis of the facts and circumstances as of the time that an action … arrives [in federal court] from a state court by way of removal." *Thomas v. Adecco USA, Inc.*, No. 1:13-cv-00070-JAW, 2013 WL 6119073, at *4 (D. Me. Nov. 21, 2013) (quoting 14AA CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3702.4, at 457-61 (4th ed. 2011)).

First, the fact that plaintiff did not request a specific amount in his complaint is not controlling. In fact, in Maine, a state court plaintiff's filing is not permitted to demand a specific amount in the complaint. 14 M.R.S. § 52. In addition, Plaintiff's speculation regarding the amount he might ultimately recover is neither a statement nor a stipulation as to the amount of damages he claims as back pay or front pay.[3] Even if Plaintiff had stipulated that his total claim against Defendant was for less than $75,000, such a stipulation would not be determinative of this Court's jurisdiction. *Vrandenburgh v. Wal-Mart Stores, Inc.*, 397 F. Supp. 2d 76, 77 (D. Me. 2005).[4]

---

[3] Plaintiff states that he "secured employment immediately after termination with another contract mail carrier," (Reply at 3), but he does not assert that his front and back pay claims are limited to a specific amount.

[4] In support of its claim of jurisdiction, Defendant also argues that Plaintiff "has sought in excess of $75,000 prior to filing this lawsuit." (Response to Objection at 4 n.2, ECF No. 11.) Plaintiff does not appear to contest that he sought in excess of $75,000 during a mediation as part of the Maine Human Rights

As alleged in his complaint, Plaintiff was demoted from a managerial position (ECF No. 1-1, ¶ 25), given lower paying assignments after the demotion (*id*., ¶26), and ultimately his employment was terminated in 2017. (*Id*. ¶¶ 27-31.) Under the Maine Human Rights Act, Plaintiff can recover back pay and front pay, along with compensatory and punitive damages.[5] Defendant asserts that Plaintiff was paid an annual salary of $48,000 as a manager, with a car allowance of $400 per month and reimbursement for other expenses.[6] Plaintiff states that he "secured employment immediately after termination with another contract mail carrier." (Reply at 3.) Plaintiff, however, asserts no facts as to how the

---

Commission proceeding, though he asserts that Defendant "sought to settle this matter … for an amount far less than $75,000." (ECF No. 13 at 3.) "Although some courts outside of this circuit have treated a settlement letter as independently sufficient to establish the amount in controversy, … a settlement demand is not the sole determinative factor to consider when assessing the jurisdictional amount in controversy." *Doughty*, 344 F. Supp. 2d at 219. A settlement demand could, however, be considered as one factor in determining the litigation value of a case. *See, e.g., Vermande v. Hyudai Motor America, Inc*., 352 F. Supp. 2d 195, 202 (D. Conn. 2004) (citing *Doughty*, 344 F. Supp. 2d at 219).

[5] Compensatory damages under subsection 4613(2)(B)(8) "do not include back pay, interest on back pay or any other type of relief authorized elsewhere" under the subsection. 5 M.R.S. § 4613(2)(B)(8)(d). Plaintiff is requesting punitive as well as compensatory damages. Where, as here, both actual and punitive damages are recoverable under a complaint, a court must consider each type of damage in determining the jurisdictional amount. *Bell v. Preferred Life Assur. Soc'y of Montgomery Ala*., 320 U.S. 238, 240 (1943) (footnote omitted); *see also Perez-Webber v. InterCoast Career Inst*., 2:16-cv-00196-JAW, 2018 WL 2347061, at *12 (D. Me. May 23, 2018) (citing *Bell*).

[6] Defendant also contends that Plaintiff, if successful, would be entitled to an award of attorney's fees pursuant to the Maine Human Rights Act and the Whistleblower Protection Act. Where a statute mandates or allows such an award, a court may properly consider attorney's fees "in determining whether the jurisdictional threshold has been met." *Raymond v. Lane Constr. Corp*., 527 F. Supp. 2d 156, 159-60 (D. Me. 2007). Generally, however, "courts have not allowed a *pro se* plaintiff to collect under attorney fees provisions, and '[a]n award of attorney's fees … has long been unavailable to *pro se* litigants in the First Circuit.'" *Violette v. CBHH, LLC*, No. 1:19-cv-00015-GZS, 2019 WL 2745728, at *2 (D. Me. July 1, 2019) (quoting *Marcello v. Maine*, 238 F.R.D. 113, 117 (D. Me. 2006); *see also Daley v. Fed Bureau of Prisons*, 199 F. App'x 119, 121 (3d Cir. 2006) ("The general requirement of attorney representation in order to collect attorney's fees is well established.") Although Defendant urges that it is possible that Plaintiff will retain counsel at some point (and notes that Plaintiff affirmatively states in his complaint that he reserves the right to do so (*see* ECF No. 1-1, at 2)), to include an amount for attorney fees would be speculative.

compensation in his current job compares with the compensation he earned from Defendant.

While the potential recovery for back pay and front pay is uncertain, Plaintiff's recovery for compensatory and punitive damages could be as much as $100,000 depending on the number of people employed by Defendant. If Defendant has 100 or fewer employees, Plaintiff's compensatory and punitive damages recovery could not exceed $50,000; if Defendant has between 101 and 201 employees, Plaintiff's recovery would be limited to no more than $100,000. 5 M.R.S. § 4613(2)(B)(8)(e).[7] Defendant claims that it has "at least 100 employees in the United States" and that therefore Plaintiff could recover up to $100,000 in compensatory damages. (Response at 3.) Plaintiff did not dispute Defendant's assertion regarding its number of employees or that the $100,000 cap applies in this case. Although Plaintiff did not dispute Defendant's assertion that the $100,000 cap applies, the assertion of "at least 100 employees" does not preclude the possibility that Defendant has 100 employees, in which event the $50,000 cap would apply. Even if Defendant has 100 or fewer employees, however, Plaintiff's recovery of $50,000 in compensatory and punitive damages, together with a relatively modest back pay/front pay award, would result in an award of $75,000.

---

[7] Under the Maine Human Rights Act, 5 M.R.S. § 4613(2)(B)(8)(e), the compensatory and punitive damages payable by a defendant employer found liable for intentional employment discrimination is capped at $50,000 if the defendant had "more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year…." 5 M.R.S. § 4613(2)(B)(8)(e)(i). Such damages are capped at $100,000 for defendant employers who employ more than 100, but fewer than 201 employees. 5 M.R.S. § 4613(2)(B)(8)(e)(ii).

When the parties' pleadings are considered, given the potential for Plaintiff to recover front pay, back pay, compensatory and punitive damages, and "drawing all reasonable inferences in favor of" Plaintiff's complaint," *Doughty*, 344 F. Supp. 2d at 219, Defendant has met its burden of supplying sufficient factual allegations "'indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount.'" *Abdel-Aleem v. OPK Biotech LLC*, 665 F.3d 38, 42. In other words, Defendant has established by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court overrule Plaintiff's Objection to Defendant's Notice of Removal (ECF No. 9).

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 14th day of January, 2020.