UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MICHAEL A. CONNOLLY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:19-cv-00510-GZS |
| | ) | |
| DON DORRIS D/B/A | ) | |
| POSTAL FLEET SERVICES, INC., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION ON DEFENDANTS' MOTION TO DISMISS**

In this diversity action, Plaintiff alleges that Defendants Postal Fleet Services, Inc. and Don Dorris[1] terminated his employment with Defendants in violation of the Maine Human Rights Act, 5 M.R.S. § 4572(1)(A), and the Maine Whistleblowers' Protection Act, 26 M.R.S. §§ 833(1)(A) & (D). Plaintiff also alleges that Defendants violated his right under 26 M.R.S. § 631 to review his personnel file. The matter is before the Court on Defendants' Motion to Dismiss. (Motion, ECF No. 7.)

Following a review of the pleadings and after consideration of the parties' arguments, I recommend the Court grant in part and deny in part Defendants' motion.

---

[1] Plaintiff identified the "Defendant" as "Don Dorris D/B/A Postal Fleet Services, Inc." in the caption of his complaint, while referring to "Defendants, Don Dorris and/or Postal Fleet Services" in the allegations in the complaint. (Complaint, ECF No. 1-1.) Postal Fleet Services, Inc. is alleged to be a corporation. (Complaint ¶ 6.) Plaintiff alleges that Defendant Dorris is the "Owner" of Postal Fleet Services, Inc. (Complaint at 1.) In their motion, Defendants assume that Plaintiff intended to sue Defendant Dorris individually. (Motion at 5.) For purposes of this recommended decision, I refer collectively to Postal Fleet Services, Inc. and Mr. Dorris as "Defendants," unless otherwise noted.

## BACKGROUND

The facts set forth below are derived from Plaintiff's complaint.  (Complaint, ECF No. 1-1.)  Plaintiff's factual allegations are deemed true when evaluating a motion to dismiss. *McKee v. Cosby*, 874 F.3d 54, 59 (1st Cir. 2017).

Defendant Postal Fleet Services, Inc. (PFS), with a principal place of business in St. Augustine, Florida, provides bulk mail hauling services to the United States Postal Services. (Complaint at 1.)  Plaintiff began his employment with PFS in January 2017 as a manager at PFS's operation in Scarborough, Maine.  (*Id*. ¶ 1.)  Plaintiff's position included intermittent tractor trailer driving. (*Id*.)   During the relevant time, Defendant Dorris was the president of PFS.  (*Id*.)

In Plaintiff's managerial capacity, he supervised several drivers, including Thomas Owens.  (*Id*. ¶¶ 2, 3.)  Plaintiff used a private group text site, which was accessible only by him and the drivers under his supervision, to communicate regarding route scheduling assignments and other issues. (*Id*. ¶¶ 3, 4.) Plaintiff and Mr. Owens had some disagreements over route scheduling and Mr. Owens aired his views on the group text site. (*Id*. ¶¶ 5-9.)  Mr. Owens also posted on the group text site what Plaintiff considered to be "threats."  (*Id*. ¶ 5.) When Plaintiff requested assistance from PFS's management to address the matter, a member of PFS's management team, Karl Sheline, travelled to Maine to assess the situation between Plaintiff and Mr. Owens.  (*Id*. ¶ 10.)  During the visit, Plaintiff showed Mr. Sheline the group texts, including the inappropriate text messages, graphics and alleged threats that had been posted by Mr. Owens.  (*Id*. ¶ 12.)

Mr. Sheline instructed Plaintiff to prepare a written account of the events concerning Mr. Owens and forward it to PFS' Human Resource Department for potential disciplinary action. (*Id.* ¶ 13.) In response to Mr. Sheline's request, Plaintiff forwarded to PFS by email the written account he prepared and all the text messages and graphics Mr. Owens had posted. (*Id.* ¶ 14.) Within minutes of transmittal of the texts and graphics, the Director of Operations instructed Plaintiff to terminate Mr. Owens' employment. (*Id.* ¶ 15.)

After the termination of Mr. Owens' employment, Plaintiff received a phone call from an attorney representing PFS, who informed Plaintiff that Mr. Owens "was taking some type of legal position against the company related to" Mr. Owens's employment termination. (*Id.* ¶ 17.) PFS's Safety Manager and Defendants' attorney later asked Plaintiff for the text messages from Mr. Owens "and all drivers involved." (*Id.* ¶ 22.) Defendants' representatives instructed Plaintiff to send the text messages to PFS's Safety Department (to which he had previously submitted his written account and the text messages) and dictated the content of an email to send to PFS's Safety Manager explaining Plaintiff's "delay" in sending the complete thread. (*Id.* ¶¶ 22, 23.) After considering the proposed email, Plaintiff advised PFS's Safety Manager, the intended recipient, that he could not provide "a false statement," given that he sent the "complete" thread of texts weeks earlier; he believed the dictated message "conflicted with that past event by indicating this requested submittal was the initial submittal when it was not." (*Id.* ¶ 24.) Plaintiff stated that he would not send the proposed transmittal email. (*Id.*) Approximately a month later, Plaintiff was demoted from manager to driver. (*Id.* ¶ 25.) Several months later, Plaintiff's employment was terminated. (*Id.* ¶ 31.)

3

**DISCUSSION**

**A.  Standard of Review**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may seek dismissal of "a claim for relief in any pleading" if that party believes that the pleading fails "to state a claim upon which relief can be granted."  In its assessment of the motion, a court must "assume the truth of all well-plead facts and give the plaintiff[] the benefit of all reasonable inferences therefrom."  *Blanco v. Bath Iron Works Corp.*, 802 F. Supp. 2d 215, 221 (D. Me. 2011) (quoting *Genzyme Corp. v. Fed. Ins. Co.,* 622 F.3d 62, 68 (1st Cir. 2010)).  To overcome the motion, a plaintiff must establish that his allegations raise a plausible basis for a fact finder to conclude that the defendant is legally responsible for the claim at issue. *Id.*  The complaint may not consist entirely of "conclusory allegations that merely parrot the relevant legal standard." *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 231 (1st Cir. 2013).  Federal Rule of Civil Procedure 12(b)(6) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Although a pro se plaintiff's complaint is subject to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the complaint may not consist entirely of "conclusory allegations that merely parrot the relevant legal standard," *Young v. Wells Fargo, N.A.,* 717 F.3d 224, 231 (1st Cir. 2013). *See also Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980) (explaining that the liberal standard applied to the pleadings of pro se plaintiffs "is not to say that pro se plaintiffs are not required to plead basic facts sufficient to state a claim").

4

### B. Defendant Dorris

In Counts I and II of his complaint, Plaintiff asserts claims under the Maine Human Rights Act (MHRA), 5 M.R.S.A. § 4572, alleging employment discrimination pursuant to 26 M.R.S.A. § 833, the Maine Whistleblower's Protection Act (MWPA). Section 4621 of the MHRA authorizes a private cause of action for a person subject to unlawful discrimination. 5 M.R.S.A. § 4621.

The MHRA's definition of "employer" includes "any person acting in the interest of any employer …." 5 M.R.S. § 4553(4). "The federal district court in Maine," however, "has consistently applied federal precedent to reject the notion of individual liability under the MHRA." *Thayer Corp. v. Reed,* No. 2:10-CV-00423- JAW, 2011 WL 2682723, at *17 (D. Me. July 11, 2011) (citing *MHRC v. Coffee Couple LLC,* No. 1:10-CV-00180-JAW, 2011 WL 2312572, at *7 (D. Me. June 8, 2011)). "[T]he inclusion in the MHRA of persons 'acting in the interest of an employer,' merely ensures that respondeat superior liability can be imposed upon Maine employers for the actions of their agents." *Quiron v. L.N. Violett Co.*, 897 F. Supp. 18, 21 (D. Me. 1995).

Liability for the employment discrimination provisions of the MHRA is limited to the employer. *United States ex rel. Worthy v. E. Maine Healthcare Sys.*, No. 2:14-CV-00184-JAW, 2017 WL 211609 at *32 (D. Me. Jan. 18, 2017) (citing *Fuhrmann v. Staples Office Superstore East, Inc.*, 2012 ME 135, ¶ 24 n.7, 58 A.3d 1083). While many of the reported cases arise out of claims against supervisors or managers, the preclusion of individual liability under the MHRA also applies to owners and officers of corporate entities. *Thayer*, at *7; *Miller v. Hall*, 245 F. Supp. 2d 191, 194 (D. Me. 2003) ("As an

owner of the corporate defendant, Hall will "necessarily absorb the pinch from [that defendant's] liability, but as to [his] individual capacity liability, it does not matter even if Hall was [the corporate defendant's] alter ego." (internal citations omitted)).  Defendant Dorris is not alleged to be Plaintiff's employer.  Accordingly, Plaintiff cannot maintain a claim under the MHRA against Defendant Dorris.[2]

### C.  PFS

#### 1.  Plaintiff's Claims Pursuant to 26 M.R.S. § 833(1)(A)

To state a whistleblower claim under the MWPA, an employee must demonstrate that (1) the employee engaged in activity protected by the statute; (2) the employee was the subject of an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action.  *Costain v. Sunbury Primary Care, P.A.*, 2008 ME 142, ¶ 6, 954 A.2d 1051, 1053.  Protected activity under Section A of the MWPA is established where, inter alia, "[t]he employee, acting in good faith, . . .  reports orally or in writing to the employer or a public body what the employee has reasonable cause to believe is a violation of a law or rule adopted under the laws of this State, a political subdivision of this State or the United States."  26 M.R.S. § 833(1)(A).

Defendants contend that Plaintiff has asserted either (1) that he refused to take a duplicative action when asked by PFS to resend the "complete" set of texts and graphics involving Mr. Owens, or (2) that he was mistaken about which set of texts he had

---

[2] Defendant Dorris's liability "even if authorized by the MHRA, would be wholly coextensive with [PFS's] liability."  *Gouch v. E. Me. Dev. Corp.*, 172 F. Supp. 2d 221, 227 (D. Me. 2001); *accord Miller v. Hall*, 245 F. Supp. 2d 191, 194 (D. Me. 2003) ("The presence of an individual owner of a corporate defendant in a Title VII action is superfluous").

previously sent and the request from PFS to send all the texts among the drivers was not duplicative.  (Motion at 8.)  Defendants argue that neither scenario constitutes protected activity under any section of the MWPA.

Plaintiff maintains that he sent all the texts of all drivers weeks prior to the second request to do so.  (Opposition at 2, ECF No. 10.)  Plaintiff alleges that the second request from PFS representatives, including PFS's attorney, was made in the context of a legal challenge by Mr. Owens.  (Complaint ¶¶ 17, 21, 22.)[3]

Section A of the MWPA "'does not protect every complaint made by an employee,' but only those that further the statute's purpose of deterring retaliation for reporting what an employee reasonably believes is an illegal act." *Apon v. ABF Freight Systems*, 2:17-cv-00335-JDL, 2019 WL 2527089, at *3 (June 19, 2019) (*Apon II*) (quoting *Bodman v. Me. Dep't of Health & Human Servs.*, 787 F. Supp. 2d 89, 110 (D. Me. 2011)).  An employee's refusal alone to perform a directive from an employer because the employee believes the act is illegal is not actionable as a "report" of a violation of law under 26 M.R.S. § 833(1)(A).  In *Devoid v. Clair Buick Cadillac, Inc*., 669 A.2d 749 (Me. 1996), the Maine Law Court considered whether an employee's refusal to carry out a directive the employee believed to be illegal was actionable under 26 M.R.S. § 833(1)(A) or § 833(1)(D).  In concluding that a refusal was not actionable, the Law Court wrote;

Section 833(1)(A) prohibits the discharge of an employee because the employee *reports* a violation of law. On the other hand, section 833(1)(D) prohibits the

---

[3] Defendants ask the Court to take judicial notice that there is no record of any litigation filed in state or federal court in Maine by Thomas Owens against Defendants.  (Motion at 2.)  Regardless of whether litigation has been initiated, at this stage of the proceedings, the lack of formal litigation is not controlling and Plaintiff's allegation that he was told that Mr. Owens was involved with PFS in a legal challenge to the termination of Mr. Owens' employment is deemed true for purposes of evaluating the motion to dismiss.

discharge of an employee because the employee *refused* to carry out a directive. Section 833(1)(D), however, is limited to situations involving a physically dangerous condition. Although [the plaintiff] argues that the distinction weakens the whistleblower's protection, that must remain a matter of legislative concern.

*Id*. at 751. (emphasis in original).

Subsequently, the Maine legislature modified § 833(1)(D) to provide protection for an employee who "has refused to carry out a directive to engage in activity that would be a violation of a law or rule adopted under the laws of this State…"  The legislature, however, did not modify § 833(1)(A).  The law thus recognizes a distinction between a report to an employer of a violation of law and a refusal to participate in illegal activity and a separate report of a violation of law.  Nevertheless, an allegation of a refusal, with even minimal further action toward a report, could be sufficient to withstand a 12(b)(6) challenge on a § 833(1)(A) refusal claim.  For instance, in *Apon v. ABF Freight Systems*, 2:17-cv-00335-JDL, 2018 WL 1831411 (D. Me. Apr. 17, 2018) (*Apon I*), this Court, in denying a motion to dismiss because in addition to refusing to sign a document, the plaintiff told his supervisor that he wanted to express his concerns to the person who supervised the supervisor, the Court concluded that the request to speak with the supervisor "constituted a substantial step toward making a report of what [the plaintiff] believed was an unlawful demand." *Id*. at *4.

Here, Plaintiff alleges that during a telephone conference, PFS's attorney and Safety Manager instructed him

22.  …to Email PFS Safety Manager information Plaintiff had previously sent to PFS, namely the complete text messages and graphics between Owens and all drivers involved, and further instructed Plaintiff to type the following

dictated statement on said Email attachment, "Sorry I Did Not Get This To You Sooner, I Have Been Swamped Since Owens Was Fired, Attached Is The Information You Requested" (Sic).

In the two succeeding paragraphs, Plaintiff alleges:

23.  Plaintiff was instructed to send the above previously sent text messages and said dictated statement … directly to PFS' Safety Department and "NOT" to send [PFS's attorney] a copy.

24.  After said phone call … ended, Plaintiff gave thought about what was being requested of him and decided to call PFS' Safety Manager, … back to state he (Plaintiff) could not provide a false statement to PFS by reason that all attached information was sent weeks ago and the dictated statement vastly conflicted with that past event by indicating this requested submittal was the initial submittal when it was not.

Unlike in *Apon I*, Plaintiff has not asserted that he attempted to communicate or expressed a desire to communicate with the Safety Manager's supervisor or anyone else in management.

To require something more than a refusal to constitute a report under § 833(1)(A), as the Law Court did in *Devoid* and this Court recently did in *Apon I*, is sound.  Otherwise, a refusal would be governed by the lesser standard of § 833(1)(A) (i.e., the employee *reasonably believes* there to be a violation of law) rather than by the § 833(1)(D) requirement for a refusal - that the activity *would be* a violation of law.  Indeed, if a refusal, without more, constituted a report, the legislature arguably would not have had to amend § 833(1)(D) to address the concern noted in *Devoid*.  Given that § 833(1)(A) remains unchanged following *Devoid*, under the reasoning of *Devoid*, a refusal does not constitute a report.  *See also*, *Smith v. Heritage Salmon, Inc.,* 180 F. Supp. 2d 208, 217 (D. Me. 2002).

Because Plaintiff has not alleged more than a refusal, Plaintiff has not alleged an actionable claim under § 833(1)(A).

## 2.  Plaintiff's Claims Pursuant to 26 M.R.S. § 833(1)(D)

Section D of the MWPA provides, in relevant part, that an employer may not discharge an employee where "[t]he employee acting in good faith has refused to carry out a directive to engage in activity that would be a violation of a law or rule adopted under the laws of this State, a political subdivision of this State or the United States...." 26 M.R.S. § 8331(1)(D).  "Section D of the MWPA, however, does not protect an employee who has refused to carry out a directive to engage in an activity that he *genuinely believes would be* a violation of a law or rule.  Rather, it protects employees who, acting in good faith, refuse to carry out a directive or engage in an activity that "*would be* a violation of a law or rule[.]" *Apon I*, 2018 WL 1831411 at *3, (emphasis in original).

Defendants argue that Plaintiff has failed to allege that he was directed to engage in an activity that would be a violation of a law or rule.  Instead, Defendants contend, Plaintiff "has simply alleged [what] would have been a misrepresentation" had Plaintiff sent the requested email.  (Motion at 13.)

At this stage of the proceedings, the Court must accept as true Plaintiff's allegations and draw all reasonable inferences in favor of Plaintiff.  *Goldberg v. Unum Life Ins. Co. of America*, 527 F. Supp. 2d 164, 166 (D. Me. 2007), (citing *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 30 (1st Cir. 2000)).  Plaintiff alleges that in connection with Mr. Owens' potential legal challenge to the termination of his employment, Plaintiff refused to prepare an email that misrepresented when information

relevant to the decision to terminate Mr. Owens' employment was provided to management.

One can reasonably infer from Plaintiff's allegations that he refused to prepare the requested email because the email would violate the law or a rule. Plaintiff's assertion is not unfounded. First, an intentional misrepresentation could constitute actionable fraud. *See generally, Barr v. Dyke*, 2012 ME 108, ¶ 16, 49 A.3d 1280, 1286. Furthermore, to the extent Plaintiff was concerned that the information was requested for PFS's possible use in litigation, its use in that context could result in a violation of a rule or law. *See Aoude v. Mobile Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) ("[a] 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense.")

In short, while a question remains as to whether Plaintiff would have violated the law if he had prepared and sent the email as requested, accepting as true the factual allegations in the complaint and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has asserted a plausible claim under 26 M.R.S. § 833(1)(D).

### D.  Plaintiff's Claims Pursuant to 26 M.R.S. § 631

Section 631 requires an employer to make an employee's personnel file available for review and copying within ten (10) days after receipt of a written request. 26 M.R.S. § 631. The review and copying "must take place at the location where the personnel files are maintained and during normal office hours…." *Id*. Section 631 permits injunctive

relief against an employer "who, following a request pursuant to this section, without good cause fails to provide an opportunity for review and copying of a personnel file, within 10 days of receipt of that request." *Id.* An employer who fails to so provide may be subject to civil forfeiture penalties, not to exceed $500. *Id.* The forfeiture is collectible by the Maine Department of Labor. *See Boylan v. Foster Carpenter Black & Co., LLP*, 2002 WL 1023514, at *1 (Me. Super. Ct. Apr. 16, 2002). There is, however, no private right of action to enforce a civil forfeiture. *Id.*

Defendants assert that PFS sent the records to Plaintiff on October 21, 2019 and received confirmation that the records were delivered on October 22, 2019. (Affidavit of Brandon Meredith ¶ 7-8, ECF No. 7-1.) Because Plaintiff now has a copy of his personnel file, Defendants contend that his claim under Section 631 is moot and must be dismissed.

While Defendants move to dismiss Plaintiff's Count III under Rule 12(b)(6), a motion to dismiss a claim for mootness is more appropriately asserted pursuant to Rule 12(b)(1). A Rule 12(b)(1) motion may be used to challenge a court's subject-matter jurisdiction on mootness grounds. *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001) (noting that Rule 12(b)(1) is a proper vehicle to challenge whether a case is moot). Pursuant to Rule 12(b)(1), a court must dismiss an action if the court lacks subject matter jurisdiction. A court lacks jurisdiction where there is no live case or controversy presented and the case has become moot. *Redfern v. Napolitano*, 727 F.3d 77, 83-83 (1st Cir. 2013). When issues presented are no longer live, "a case or controversy ceases to exist, and dismissal of the action is compulsory." *Id.*

In considering a Rule 12(b)(1) motion challenging legal sufficiency, a court may consider extra-pleading material, including "documents attached to both sides' motions and supplemental briefs," without converting the motion to a summary judgment motion. *González v. U.S.*, 284 F.3d 281, 288 (1st Cir. 2002); *see also Acosta-Ramirez v. Banco Popular de P.R.*, 712 F.3d 14, 18 (1st Cir. 2013) (court may weigh "whatever evidence has been submitted in the case."); *accord Valentin*, 254 F.3d at 363 (review may include "explanatory affidavit or other repository of uncontested facts").] The party invoking federal jurisdiction bears the burden of showing its existence. *Valentin*, 254 F.3d at 363.

Because the only relief to which Plaintiff would be entitled under § 631 is an injunction ordering Defendants to provide Plaintiff with the opportunity to copy the personnel file he has already received, Plaintiff's claim is moot. "Mootness is jurisdictional," and, therefore, this Court has no jurisdiction over the Plaintiff's § 631 claim. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005) (citing U.S. Const., Art. III, § 2; *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) ("noting that "[t]he Constitution's case-or-controversy limitation on federal judicial authority, Art. III, §2, underpins both our standing and our mootness jurisprudence")). Because there is no case or controversy regarding the personnel file, dismissal of Count III of Plaintiff's complaint is warranted.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court grant in part and deny in part Defendants' motion to dismiss. I recommend the Court grant the motion as to all of

Plaintiff's claims except Plaintiff's claim under 26 M.R.S. § 833(1)(D) against Defendant

Postal Fleet Services, Inc.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 17th day of June, 2020.